UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| CHARLES HOLMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>ANTHONY WILLIAMS,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 02-1823 (PLF)

OPINION

This matter is before the Court on defendant's motion to dismiss and plaintiff's
motion for partial summary judgment.  Plaintiff served in the administration of the defendant,
Anthony Williams, Mayor of the District of Columbia, as Director of the District of Columbia
Office of Human Rights from February 2000 until his termination in June 2002.  The complaint
asserts five claims arising from plaintiff's termination:  deprivation of a protected liberty interest
without due process of law (Count I), false light invasion of privacy (Count II), defamation
(Count III), wrongful termination (Count IV), and intentional infliction of emotional distress
(Count V).  Defendant is sued in both his individual and official capacities.

Defendant has filed a motion to dismiss the complaint for lack of subject matter
jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a
claim under Rule 12(b)(6).  Upon consideration of the parties' arguments and the entire record of
the case, the Court grants defendant's motion to dismiss Counts II, III and V of the complaint for
lack of subject matter jurisdiction, but denies plaintiff's motion to dismiss Counts I and IV for
failure to state a claim.  The Court does dismiss these two claims against Mayor Williams in his

individual capacity, however, because these claims are barred by absolute and qualified immunity. Finally, the Court denies plaintiff's motion for partial summary judgment.

## I. BACKGROUND

The facts alleged in the complaint are as follows: Plaintiff Charles Holman served in defendant Anthony Williams's administration as Director of the District of Columbia Office of Human Rights ("OHR") from February 2000 to June 2002. See Complaint ("Compl.") ¶ 5. In late June or early July 2001, the defendant's then-Chief of Staff, Joy Arnold, called a meeting attended by plaintiff and others. See id. ¶ 7. At that meeting Barbara Bullock, then the president of the Washington Teachers' Union, demanded that plaintiff's office, the District of Columbia Office of Human Rights, enter into a contract with Curtis Lewis & Associates ("CLA") for the review of complaints filed with OHR. See id. Plaintiff rejected this demand and, as a result, Ms. Arnold assigned one of her assistants the task of "steering" the contract to CLA. See id. ¶ 8. CLA was awarded the contract with OHR in the fall of 2001. See id.

After CLA began its work under the contract, OHR experienced problems with CLA requiring the repeated return of files for corrective action. See Compl. ¶ 9. Plaintiff advised the Mayor and Ms. Arnold of these problems in March and April 2002, by way of a confidential weekly report. See id. In April 2002, Ms. Arnold shared this confidential memorandum with CLA. See id. On May 4, 2002, *The Washington Post* reported that a staff assistant to Ms. Arnold, who had been assigned to "steer" the OHR contract to CLA, had been indicted for allegedly taking kickbacks from contractors. See id. ¶ 10.[1] Upon learning of this,

---

[1]     This person apparently was Terence Coles, subsequently convicted by a jury in this Court of conspiracy, two counts of bribery and two counts of fraud. See United States v. Coles, 403 F.3d 764 (D.C. Cir. 2005); see also Plaintiff's Supplemental Memorandum in

plaintiff scheduled a meeting with Deputy Mayor Carolyn Graham to discuss plaintiff's "concerns" regarding the CLA contract and the fact that Ms. Arnold's staff assistant had steered the contract to CLA in the first place. See id. ¶ 11. He subsequently met with Ms. Arnold to discuss the matter as well. See id. ¶ 12. Plaintiff alleges that his concerns were "repeatedly ignored by the defendant" and members of his administration, and that he was "implored to let this issue rest." Id. ¶ 35.

On June 4, 2002, plaintiff was called into an emergency meeting with the Mayor's then Chief of Staff Kelvin Robinson, Deputy Mayor Graham, and D.C. Personnel Director Milou Carolan, in which Mr. Robinson advised plaintiff that the Mayor wanted plaintiff to step down for "political reasons." See Compl. ¶¶ 13-14. Robinson indicated to plaintiff that Mayor Williams wanted plaintiff out of the office before the Mayor officially announced his re-election bid, about two weeks hence. See id.

On June 8, 2002, a termination letter was hand-delivered to plaintiff at his residence. See Compl. ¶ 14. On June 12, Assistant Corporation Counsel Mark Back contacted plaintiff through counsel and informed plaintiff that if he resigned, the District would give him six weeks' severance pay. See id. ¶ 15. Plaintiff was told that if he did not accept this offer by 10:00 a.m. on June 13, he would be terminated and the press would be told that the termination had been for cause. See id. Plaintiff alleges that at approximately 10:00 a.m. on June 13, 2002, the Mayor had his office inform *The Washington Post* that plaintiff had been fired for cause. See id. ¶ 15. On June 14, 2002, *The Washington Post* reported plaintiff's termination as follows:

> a top administration official said Holman was fired because of the
> discrimination complaints and "his inability to get along with

---

Opposition to Defendant's Motion to Dismiss ("Pl's. Suppl. Opp.") at 1-2.

3

> staff." The official, who spoke on condition of anonymity, said:
> "The contention was escalating to the point that the only way to
> solve the problem was to remove him. . . . The office was up in
> arms.  It was total chaos."

Id.  Plaintiff alleges that he was actually fired because he refused to remain silent about illegal

contract-related activity within the Mayor's administration.  See Compl. ¶¶ 35-36.

Plaintiff filed a complaint in this Court on September 13, 2002.  Defendant then

filed a motion to dismiss, which was fully briefed.  Plaintiff subsequently announced his

intention to file an amended complaint incorporating claims of race discrimination and

retaliation that had been asserted in another complaint filed in this Court, which complaint the

Court had dismissed *sua sponte*.  See Holman v. District of Columbia, Civil Action No. 03-2026

(D.D.C. filed Sep. 30, 2003).  The Court directed plaintiff to file his amended complaint by a

date certain and denied the government's motion to dismiss without prejudice.  No amended

complaint was forthcoming, however, and the defendant filed a new motion to dismiss

incorporating the arguments raised in the previous motion.  On August 9, 2005, plaintiff filed a

motion for partial summary judgment on his wrongful termination claim.  At the Court's

invitation, in August and September 2005 the parties filed brief supplemental memoranda on the

pending motions.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)6 of the Federal

Rules of Civil Procedure should not be granted unless a plaintiff can demonstrate no set of facts

that supports his claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  In evaluating the

motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997). While the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone or may consider materials beyond the pleadings. "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. National Academy of Sciences, 974 F.2d at 197), aff'd Scolaro v. D.C. Bd. of Elections and Ethics, No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001); see also Erby v. United States, 424 F. Supp. 2d 180, 182-83 (D.D.C. 2006).

A motion for summary judgment under Rule 56 may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v.

5

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir.

2006).  When a motion for summary judgment is under consideration, "the evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255; see also Washington Post Co. v. United States Dept. of

Health and Hum. Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

Plaintiff raises five claims in his complaint:  (1) false light invasion of privacy,

(2) defamation, (3) intentional infliction of emotional distress, (4) wrongful termination, and

(5) deprivation of a protected liberty interest without due process of law.  The Court concludes

that the District of Columbia Comprehensive Merit Personnel Act preempts plaintiff's common

law tort claims, which therefore will be dismissed for lack of subject matter jurisdiction.

Plaintiff has stated a claim for wrongful termination and for deprivation of a liberty interest

without due process, and the Court will deny defendant's motion to dismiss those claims.

Because Mayor Williams is shielded from personal liability for such claims, however, the Court

dismisses these claims against him in his individual capacity.  The case therefore may go

forward on these two claims only and only against the Mayor in his official capacity; it

essentially is now a case against the District of Columbia.

### B. False Light, Defamation and Intentional Infliction of Emotional Distress (Counts II, III & V)

Defendant argues that plaintiff's claims of false light, defamation, and intentional

infliction of emotional distress are preempted by the District of Columbia's Comprehensive

Merit Personnel Act, D.C. CODE ANN. §§ 1-601 et seq. ("CMPA").  See Defendant's Motion to

Dismiss at 33-36. The CMPA was enacted to provide employees of the District of Columbia an

impartial and comprehensive administrative scheme for resolving employee grievances. See

6

D.C. CODE ANN. §§ 1-601.02(a)(5).  The District of Columbia Court of Appeals consistently has

held that, with only one exception, the CMPA is the exclusive avenue for aggrieved employees

of the District of Columbia to pursue work-related complaints.  See Baker v. District of

Columbia, 785 A.2d 696, 697-98 (D.C. 2001)  (CMPA is exclusive remedy for D.C. employees;

"the Superior Court is not an alternative forum . . ., but rather serves as a last resort for reviewing

decisions generated by CMPA procedures"); Robinson v. District of Columbia, 748 A.2d 409,

411-12 (D.C. 2000) (holding that the only exception is for torts based on a claim of sexual

harassment, which initially may be filed in District of Columbia Superior Court); Stockard v.

Moss, 706 A.2d 561, 567 (D.C. 1997) ("[T]he CMPA provides the exclusive remedy for claims

falling within its ambit.").

 The CMPA defines a "grievance," in relevant part, as "any matter under the

control of the District government which impairs or adversely affects the interest, concern, or

welfare of employees. . . ."  See D.C. CODE ANN. § 1-603.01(10).  The District of Columbia

Court of Appeals has held that common law tort claims such as those brought by plaintiff are

considered grievances and must be pursued through CMPA procedures.  See Baker v. District of

Columbia, 785 A.2d at 697-98 (CMPA is exclusive remedy for litigation of emotional distress

and defamation claims); Robinson v. District of Columbia, 748 A.2d at 411 (CMPA is exclusive

remedy for employee's false light, emotional distress and defamation claims).  Preemption by

the CMPA divests the trial court – whether it be the Superior Court or this Court – of subject

matter jurisdiction.  See Thompson v. District of Columbia, 428 F.3d 283, 288-89 (D.C. Cir.

2005) (citing Robinson v. District of Columbia, 748 A.2d 409, 411 n.4 (D.C. 2000)).

 Plaintiff does not contest the fact that the CMPA would preempt his common law

tort claims if he were the type of employee to whom the statute applied.  Rather, he argues that

7

the grievance procedures of the CMPA were not available to him, for two reasons: first, he was an at-will employee, and second, he was a member of the "Excepted Service", a class of District employees which (plaintiff argues) is excluded from the reach of the CMPA. See D.C. CODE ANN. § 1-609.05.

Although the parties agree that plaintiff was an at-will employee, there is no basis for plaintiff's argument that because of this status the CMPA does not apply to him and thus does not preempt his claims in this Court. Section 1-602.01 of the D.C. Code provides:

> Except as provided in subsection (c) of this section, unless specifically exempted from certain provisions, this chapter shall apply to all employees of the District of Columbia government, except the Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals and the nonjudicial personnel of said Courts.

D.C. CODE ANN. § 1-602.01(a) (emphasis added). No exception for at-will employees is set forth in Section 1-602.01(c) or in any other statutory provision identified by plaintiff. Plaintiff cites Alexis v. District of Columbia, 44 F. Supp. 2d 331, 344 (D.D.C. 1999), for the proposition that the CMPA does not apply to at-will employees. Plaintiff is wrong. In Alexis Judge Urbina stated only that at-will employees are not entitled to the "pre-termination procedural protections" set forth in the CMPA. Id. at 344. He specifically distinguished the grievance provisions of the CMPA from the pre-termination procedural protections, and further held the CMPA to preempt plaintiffs' claims for defamation and intentional infliction of emotional distress. See id. at 349-50 & n.16.

Plaintiff's argument that CMPA grievance procedures were unavailable to him because he was a member of the Excepted Service also is unavailing for the simple reason that plaintiff was not a member of the Excepted Service. Plaintiff was, rather, a member of the

8

Executive Service, a class of employees that is entitled to CMPA protection.[2]  Under the D.C.

Code, "[t]he term 'Executive Service' means any subordinate agency head whom the Mayor is

authorized to appoint in accordance with subchapter X-A of this chapter."  D.C. CODE ANN.

§ 1-603.01(9).  The term "subordinate agency" refers to "any agency under the direct

administrative control of the Mayor, including, but not limited to . . . [the] Office of Human

Rights."  Id. § 1-603.01(17).  Plaintiff was the director of the District of Columbia Office of

Human Rights, and therefore was a member of the Executive Service, not the Excepted Service.[3]

        For these reasons, the Court concludes that plaintiff was the kind of employee

entitled to avail himself of CMPA grievance procedures, and his employment-related claims of

false light invasion of privacy (Count II), defamation (Count III), and intentional infliction of

emotional distress (Count V) fall within the CMPA's expansive definition of a "grievance."  See

Alexis v. District of Columbia, 44 F. Supp. 2d at 349 (citing Thompson v. District of Columbia,

593 A.2d 621, 625 (D.C. 1991)); Baker v. District of Columbia, 785 A.2d 696; Robinson v.

---

[2]     The Executive Service and the Excepted Service are mutually exclusive
categories.  The District of Columbia Personnel Manual defines the Excepted Service as those
"positions identified as being statutory, transitional, public employment, special category,
training, or policy positions, . . . These positions are not in the Career, Educational, Management
Supervisory, Legal or Executive Service."  DISTRICT OF COLUMBIA PERSONNEL MANUAL
§ 999.1, available at http://dcop.dc.gov/dcop/cwp/view,a,1218,q,529217.asp.

[3]     In support of his argument that he was a member of the Excepted Service,
plaintiff has lodged as an exhibit a February 23, 2000 Request for Personnel Action form
describing plaintiff's appointment as "Executive Service Position (Excepted Service)".  See
Plaintiff's Motion for Partial Summary Judgment, Ex. 1.  Because the Excepted Service and the
Executive Service are mutually exclusive classifications, the form is internally inconsistent,
obviously in error, and unhelpful to plaintiff's position.  In any event, as has been discussed, it is
clear as a matter of D.C. law that plaintiff's was an Executive Service position.

District of Columbia, 748 A.2d 409.[4]  Accordingly, these claims are preempted by the CMPA,

and the Court therefore dismisses Counts II, III and V for lack of subject matter jurisdiction.

## C.  Wrongful Termination (Count IV)

Defendant argues that Count IV of the complaint fails to state a claim for

wrongful termination because plaintiff was an at-will employee serving at the pleasure of the

Mayor, and that as such plaintiff has no claim for wrongful termination under D.C. law.  See

Defendant's Motion to Dismiss at 3.  Plaintiff concedes his at-will employment status but argues

that he was terminated by defendant "because he refused to comply with a criminal scheme[,]"

thus bringing his claim within the "public policy" exception to the general rule that at-will

employees cannot sue for wrongful termination.  Opposition to Defendant's Motion to Dismiss

at 2; see also Compl. ¶ 36 ("the real reason for his termination was his refusal to engage in

criminal activity in exchange for his position in the major defendant's cabinet.").

Under District of Columbia law, "[a]n employee who serves at the will of his or

her employer may be discharged 'at any time and for any reason, or for no reason at all.'"

Liberatore v. Melville Corp., 168 F.3d 1326, 1329 (D.C. Cir. 1999) (quoting Adams v. George

W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991)).  D.C. law thus presumptively bars wrongful

termination claims brought by at-will employees.  See Spychalski v. University Club, Civil No.

03-2127, Slip Op. at 6 (D.D.C. June 9, 2004).  In Adams v. George W. Cochran & Co., 597 A.2d

at 34, however, the D.C. Court of Appeals recognized a narrow public policy exception to this

rule if the plaintiff demonstrates that "the sole reason for [the employee's] discharge is the

---

[4]      Plaintiff's wrongful termination claim is not preempted by the CMPA because the
statute offers no administrative recourse to at-will employees for claims related to their
termination.

10

employee's refusal to violate the law, as expressed in a statute or a municipal regulation." The court of appeals in Carl v. Children's Hospital, 702 A.2d 159 (D.C. 1997) (en banc), went one step further and concluded that circumstances other than an employee's outright refusal to violate a law also may provide a basis for a public policy exception. A plurality of the court concluded that the recognition of any such public policy exception to the at-will doctrine must be "solidly based on a statute or regulation that reflects the particular public policy to be applied or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." Id. at 163 (Terry, J., concurring).[5]

Plaintiff alleges that he was fired for refusing to keep silent about illegal activity within the Mayor's administration – specifically, the "steering" of contracts to CLA, which plaintiff asserts violated the anti-kickback prohibitions of Section 2-303.17 of the D.C. Code. See Compl. ¶¶ 34-36.[6] He asserts that, after raising concerns about this activity to other members of the administration, he was "implored to let this issue rest," and that when he refused to do so he was terminated. Id. ¶ 35. Although plaintiff also asserts in a conclusory fashion that he was terminated for "his refusal to engage in criminal activity," Compl. ¶ 36, defendant points out, correctly, that there are no factual allegations in the complaint to support the proposition that plaintiff was fired for his refusal to violate the law. Rather, the factual allegations in the

---

[5]     The D.C. Circuit subsequently characterized this as "the effective holding" of the en banc court in Carl. Liberatore v. Melville Corp., 168 F.3d at 1331.

[6]     That section provides that "[a] contractor may not offer to pay any fee or other consideration that is contingent on the making of a contract[,]" and that "[a]n employee of a District government agency may not solicit or secure, or offer to solicit or secure, a contract for which the employee is paid or is to be paid any fee or other consideration contingent on the making of the contract between the employee and any other person." D.C. CODE ANN. § 2-303.17(b), (c).

11

complaint, and the reasonable inferences to be drawn from them, are that he was fired for refusing to keep silent about violations of law he allegedly observed by others within the administration. Thus, the narrow public policy exception articulated in <u>Adams v. George W. Cochran & Co.</u> does not apply. <u>See</u> <u>Liberatore v. Melville Corp.</u>, 168 F.3d at 1330. This does not mean, however, that plaintiff's wrongful termination claim is barred, because the Court concludes that plaintiff's claim is within the expanded exception set forth in <u>Carl v. Children's Hospital</u>.

In <u>Liberatore v. Melville Corp.</u>, 168 F.3d at 1331, the D.C. Circuit found the <u>Carl</u> exception to apply in circumstances analytically similar to those presented here. The plaintiff in <u>Liberatore</u> had been hired at-will as a pharmacist, and alleged that he had been terminated by the pharmacy which employed him in retaliation for threatening to report to the Food and Drug Administration the unlawful condition in which his employer had been storing prescription drugs. <u>See</u> <u>id.</u> at 1327. The employer's stated reason for firing the plaintiff, however, was the lapse of plaintiff's pharmacy license. <u>See</u> <u>id.</u> at 1328.

The D.C. Circuit noted that the case was not within the "narrower public policy exception announced in <u>Adams</u>" because (as here) the plaintiff "did not present his employer with an outright refusal to violate a specific statute or regulation," and it was not clear that plaintiff's threat to report his employer to the FDA was the sole reason for his termination. <u>Liberatore v. Melville Corp.</u>, 168 F.3d at 1328, 1330. But the court construed <u>Carl</u> as having articulated an "expanded public policy exception to the at-will employment doctrine" where the public policy is "'solidly based on a statute or regulation that reflects the particular public policy to be applied.'" <u>Id.</u> at 1331 (quoting <u>Carl v. Children's Hosp.</u>, 702 A.2d at 163). Finding a strong and express public policy in both federal and District of Columbia law proscribing the

12

improper storage of drugs, the court in <u>Liberatore</u> applied the expanded exception to conclude

that plaintiff's claim should have survived summary judgment. <u>See</u> <u>Liberatore v. Melville Corp.</u>,

168 F.3d at 1331-32. In doing so, it observed that D.C. law did not appear to "draw a distinction

between a threat [to lodge a complaint] and an actual complaint to the appropriate enforcement

official," nor would it bar suit where the alleged illegal conduct by supervisors had been reported

only to management. <u>Id.</u> at 1331 (citing <u>Washington v. Guest Servs.</u>, 718 A.2d 1071, 1072 (D.C.

1998)).

   Similar circumstances justify the application of the <u>Carl</u> exception here. Plaintiff

alleges that he was fired because he disclosed to other members of Mayor Williams'

administration conduct that plaintiff believed at the time to have violated the anti-kickback

provision of the D.C. Procurement Practices Act, D.C. CODE ANN. § 2-303.17.[7] The prevention

of corruption in government contracting – and the necessity of allowing public officials to report

corruption without fear of reprisal – is a public policy sufficiently strong to warrant application

of the <u>Carl</u> exception here. Although plaintiff does not allege that he reported the alleged

illegality to law enforcement authorities or that he threatened specifically to do so, it is sufficient

to survive a motion to dismiss that he reported it to other officials in the administration and that

---

  [7]  In his supplemental memorandum in opposition to the motion to dismiss, plaintiff
represents that plaintiff's allegations of impropriety subsequently were substantiated by a report
of the D.C. Auditor General, and that individuals involved in the allegedly illegal activity that
was the subject of plaintiff's complaints have since been convicted of felonies involving fraud
and kickbacks. <u>See</u> Pl's. Suppl. Opp. at 1-2, 4. While it is true that Barbara Bullock and
Gwendolyn Hemphill in the Teachers' Union case before Judge Leon, and Terence Coles in the
trial before this Court, all have been convicted of felonies related to corruption, there appears to
be no relationship between the Teachers' Union case and plaintiff's claims in this case. <u>See</u>
Defendant's Supplemental Memorandum of Points and Authorities in Support of Motion to
Dismiss and in Response to Plaintiff's Supplemental Memorandum at 8. The relevance of
Terence Coles's conduct also seems attenuated, but the Court does not foreclose the possibility
that plaintiff might be able to demonstrate its relevance to the trial of this case.

(plaintiff alleges) he was fired for doing so. See Liberatore v. Melville Corp., 168 F.3d at 1331-32; Washington v. Guest Servs., 718 A.2d at 1072. Plaintiff has stated a claim for wrongful termination that falls within the "expanded" public policy exception to the at-will employment doctrine, as articulated in Carl v. Children's Hospital and Liberatore v. Melville Corp. Whether he can prove his claim of wrongful termination at trial, of course, is a separate question.

### D. Fifth Amendment Liberty Interest (Count I)

Plaintiff claims that – at the Mayor's direction – an anonymous administration official made "false and slanderous" statements to The Washington Post, which "impugned [plaintiff's] professional reputation in such a fashion as to "effectively put a significant roadblock in his ability to obtain other employment." Compl. ¶¶ 18-20. Plaintiff alleges that, as a result of these statements, he "continues to suffer injury to his reputation as a competent professional and has been unable to secure other employment," and that defendant has therefore deprived him of a constitutionally protected liberty interest. Id. ¶ 22. Plaintiff says just enough to survive a motion to dismiss.

A claim for deprivation of a liberty interest without due process based on the defamatory statements of government officials in combination with a termination may proceed on one of two theories. The first type of claim, usually referred to as a "reputation-plus" claim, requires "the conjunction of official defamation and adverse employment action." O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Defamation alone is not actionable. To state a reputation-plus claim, a plaintiff must allege "defamation that is 'accompanied by a discharge

14

from government employment or at least a demotion in rank and pay.'" Id. (quoting Mosrie v. Barry, 718 F.2d 1151, 1161 (D.C. Cir. 1983)) (emphasis omitted).

Defendant argues, correctly, that plaintiff's claim cannot succeed under the reputation-plus theory because the allegedly defamatory statements pertained solely to plaintiff's job performance, and the reputational injury alleged therefore does not rise to the level of constitutional harm.  The court of appeals has held that, even if publicized, a dismissal for "unsatisfactory job performance . . . does not carry with it the sort of opprobrium sufficient to constitute a deprivation of liberty." Harrison v. Bowen, 815 F.2d 1505, 1518 (D.C. Cir. 1987). To implicate constitutional interests under the reputation-plus theory, the statements made in conjunction with a termination must "call into serious question those personal characteristics that are central or enduring in nature," such as dishonesty, commission of a felony, manifest racism, serious mental illness, or lack of intellectual ability." Alexis v. District of Columbia, 44 F. Supp. 2d at 339.  The anonymous administration official cited by The Washington Post told the paper only that plaintiff "was fired because of the discrimination complaints and 'his inability to get along with staff,'" and that the situation in the D.C. Office of Human Rights was extremely contentious in the time leading up to plaintiff's termination.  Such statements clearly speak only to plaintiff's job performance, rather than to any enduring defect in defendant's personality, character or intellect.[8]

___

[8]    Plaintiff argues that defendant's alleged statements to the Post reporter constitute "[a]ccusations that he was terminated for discriminating against white employees." See Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss at 17.  The quoted official, however, was not the source of information about discrimination complaints against plaintiff; the article clearly states that those complaints already had been reported in a Post article published before plaintiff's termination.

15

Plaintiff's liberty interest claim may proceed, however, under the alternative theory of "stigma or disability." The basis of such a claim is not the defamatory nature of the official speech, but "the combination of an adverse employment action and 'a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities.'" O'Donnell v. Barry, 148 F.3d at 1140 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)) (modification in original).  Such a stigma or disability may be found where the official action either (a) automatically bars plaintiff from a specific set of positions within the government, or (b) generally blocks him from pursuing employment in his chosen field of interest.  See Kartseva v. State Dep't, 37 F.3d 1524, 1529 (D.C. Cir. 1995) (State Department's termination of translator based on unspecified "counterintelligence concerns" could support liberty interest claim if effect of termination was to (a) formally exclude plaintiff from certain categories of government work, or (b) broadly preclude plaintiff from pursuing her chosen career as a translator); M.K. v. Tenet, 196 F. Supp. 2d 8, 16-17 (D.D.C. 2001) (citing O'Donnell v. Barry, 148 F.3d at 1140-42, and Siegert v. Gilley, 500 U.S. 226, 233 (1991)).  As the D.C. Circuit has explained, such a claim

> requires that the government either have formally deprived one of a legal right . . . or have so severely impaired one's ability to take advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-government employment, that the government can be said to have "foreclosed" one's ability to take advantage of it and thus extinguished the right.

Mosrie v. Barry, 718 F.2d at 1161 (footnote omitted).

The nature of the allegedly defamatory statements is not necessarily central to a "stigma or disability" claim, because such a claim turns on official action (here, a termination) that itself "'has the effect of seriously affecting, if not destroying' a plaintiff's ability to pursue

16

his chosen profession, or 'substantially reducing the value of his human capital[.]'" <u>O'Donnell v. Barry</u>, 148 F.3d at 1141 (quoting <u>Kartseva v. State Dep't</u>, 37 F.3d at 1529 and <u>Taylor v. Resolution Trust Corp.</u>, 56 F.3d 1497, 1506 (D.C. Cir. 1995)) (modifications omitted).  The due process clause is implicated by such action because "[t]he Constitution protects an individual's 'right to follow a chosen trade or profession' without governmental interference."  <u>Id.</u> (quoting <u>Kartseva v. State Dep't</u>, 37 F.3d at 1529).  The burden is on the plaintiff who "seeks to make out a claim of interference with the right to follow a chosen trade or profession that is based exclusively on reputational harm [to] show that the harm occurred in conjunction with, or flowed from, some tangible change in status."  <u>O'Donnell v. Barry</u>, 148 F.3d at 1141.

Plaintiff is an attorney.  The complaint alleges that the defendant's defamatory remarks, in combination with plaintiff's termination, "denigrated the plaintiff's professional competence and impugned his personal reputation in such a fashion as to effectively put a significant roadblock in his ability to obtain other employment."  Compl. ¶ 20.  Plaintiff alleges that his termination and the article in the *Post* so injured his reputation that he has been unable to secure other employment since.  <u>See id.</u> ¶ 22.[9]  Although defendant's actions did not formally preclude plaintiff from any employment opportunity, plaintiff alleges that his termination and the accompanying publicity have had the <u>effect</u> of "'seriously affecting, if not destroying'" his "ability to pursue his chosen profession."  <u>O'Donnell v. Barry</u>, 148 F.3d at 1141 (quoting <u>Kartseva v. State Dep't</u>, 37 F.3d at 1529).  The "broad preclusion from employment" in his chosen career that plaintiff alleges is sufficient at this early stage of the litigation to state a claim

---

[9]        In his Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss filed on August 24, 2005, plaintiff represents that he also has been unable to secure legal employment during the pendency of this litigation, despite diligent efforts to do so.

17

for deprivation of a liberty interest under a "stigma or disability" theory.  Accordingly,

defendant's motion to dismiss Count I for failure to state a claim will be denied.[10]

### E.  Mayor Williams's Immunity

Defendant argues that plaintiff's wrongful termination claim against him in his

individual capacity is barred by the absolute immunity of government officials under District of

Columbia law.  He further argues that plaintiff's due process claim against him in his individual

capacity is barred by the doctrine of qualified immunity.  The Court agrees, and dismisses

plaintiff's remaining claims against Mayor Williams (Counts I and IV) in his individual

capacity.

A public official of the District of Columbia acting "within the outer perimeter of

his duties" enjoys absolute immunity from liability for common law torts, so long as the function

being performed is discretionary rather than purely ministerial.  Expeditions Unlimited Aquatic

Enterprises, Inc. v. Smithsonian Institution, 566 F.2d 289, 292 & n.5 (D.C. Cir. 1977); see Barr

v. Matteo, 360 U.S. 564, 575 (1959); Doe v. McMillan, 459 F.2d 1304, 1317 (D.C. Cir. 1972),

rev'd in part on other grounds, 412 U.S. 306 (1973); Kendrick v. Fox Television, 659 A.2d 814,

819 (D.C. 1995).  This immunity exists "to ensure that when public officials exercise discretion

in carrying out their duties, concern about tort liability will not inhibit the 'fearless, vigorous and

effective administration of policies of government.'"  Kendrick v. Fox Television, 659 A.2d

at 819 (quoting District of Columbia v. Thompson, 570 A.2d 277, 295 (D.C. 1990)).  Because

---

[10]     On summary judgment or at trial, of course, plaintiff would have to show
substantially more.  See Alexis v. District of Columbia, 44 F. Supp. 2d at 342.  Indeed, Judge
Tatel's opinion for the court of appeals in Trifax v. District of Columbia, 314 F.3d 641, 643-45
(D.C. Cir. 2003), underscores just how limited the application of this theory is.

18

plaintiff's common law claims of defamation, false light invasion of privacy, and intentional infliction of emotional distress are preempted by the CMPA, the Court need only consider the issue of absolute immunity with respect to his wrongful termination claim.

The decision to fire plaintiff clearly was "within the outer perimeter" of the Mayor's duties. The Mayor is required by law to nominate the heads of subordinate agencies such as OTR. See D.C. CODE ANN. §§ 1-610.51(b), 1-523.01 ("The Mayor shall nominate persons to serve as subordinate agency heads in the Executive Service"). The D.C. Code further provides that these individuals "shall serve at the pleasure of the Mayor." D.C. CODE ANN. § 1-610.51(b). The decision to fire an agency head such as the plaintiff is thus a matter clearly "committed by law to [the Mayor's] control or supervision." Barr v. Matteo, 360 U.S. at 573-74 (quoting Spalding v. Vilas, 161 U.S. 483, 498 (1896)). Accordingly, the Mayor in his individual capacity is immune from tort liability for plaintiff's alleged wrongful discharge. This claim therefore will be dismissed as to the Mayor in his individual capacity (but not as to the Mayor in his official capacity).

Mayor Williams also is immune from personal liability for alleged violations of plaintiff's right to due process by the doctrine of qualified immunity. Qualified immunity "shields State officials from liability for their discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Butera v. District of Columbia, 235 F.3d 637, 645-46 (D.C. Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Analyzing a claim of qualified immunity requires a two-pronged analysis. First, the Court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). If the plaintiff

19

has alleged such a deprivation, the Court must then inquire whether the right allegedly violated was "clearly established" – that is, whether "'the contours of the right [were] sufficiently clear that a reasonable officer would understand that what he [was] doing violated that right.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (modifications in original).

The Court already has concluded that plaintiff has adequately alleged a deprivation of an "actual constitutional right," insofar as defendant's termination of plaintiff allegedly created a "stigma or disability" that foreclosed plaintiff's "freedom to take advantage of other employment opportunities.'" O'Donnell v. Barry, 148 F.3d at 1140. Plaintiff's claim thus passes the first prong of the inquiry. It does not survive the second, however, because the alleged unlawfulness of defendant's conduct would not have been apparent to a "reasonable officer." Butera v. District of Columbia, 235 F.3d at 646. Plaintiff's due process claim survives only to the extent that it proceeds on a "stigma or disability" theory, which relies not on official speech, but on a combination of "official action" and a "continuing stigma or disability" to plaintiff arising therefrom. O'Donnell v. Barry, 148 F.3d at 1140. The official action in question – plaintiff's termination – was itself not unlawful, as plaintiff served at the pleasure of the Mayor. And as the "disability" to plaintiff (his inability to find other legal work) did not arise until after plaintiff had been fired, it cannot be said that a "reasonable officer" would have understood his conduct to have violated plaintiff's constitutional rights.[11] Accordingly, Mayor

---

[11]     Plaintiff makes no allegation that the Mayor or any other responsible official could have foreseen the effect of plaintiff's termination and the statements in the *Post* on plaintiff's subsequent employment prospects. Neither does the Court find it reasonable to infer such foreseeability from the facts alleged.

20

Williams is entitled to qualified immunity from suit, and the Court will dismiss plaintiff's substantive due process claim against Mayor Williams in his individual capacity.

### F.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff has filed a motion for partial summary judgment on his wrongful termination claim, raising the (entirely new) argument that the defendant did not provide plaintiff with the 15 days' notice before termination that he was entitled to under D.C. law as a member of the Excepted Service.  See Plaintiff's Motion for Partial Summary Judgment ¶¶ 4-5.[12] As the Court has concluded, however, as a matter of D.C. law plaintiff was a member of the Executive Service, not a member of the Excepted Service.  He therefore was not entitled to the 15 days' notice provided for Excepted Service employees.  Because plaintiff is not entitled to judgment as a matter of law on this claim, the Court denies plaintiff's motion for partial summary judgment.

### III.  CONCLUSION

Plaintiff's false light invasion of privacy, defamation, and intentional infliction of emotional distress claims are preempted by the CMPA, and the Court therefore will grant defendant's motion to dismiss Counts II, III and V for lack of subject matter jurisdiction.  The complaint does, however, state a claim for deprivation of a protected liberty interest without due process of law under a "stigma or disability" theory.  See O'Donnell v. Barry, 148 F.3d at 1140, and a claim for wrongful termination under the "expanded public policy exception" to the at-will

---

[12]     Plaintiff, who is an attorney but is represented by counsel in this case, initially filed his motion for partial summary judgment *pro se*.  His counsel, however, subsequently adopted the motion.

21

employment doctrine as articulated in <u>Carl v. Children's Hospital</u>.  Accordingly, the Court

denies defendant's motion under Rule 12(b)(6) with respect to Counts I and IV.  Because Mayor

Williams enjoys immunity from suit with respect to both claims, however, the case may proceed

only against him in his official capacity.  Finally, the Court denies plaintiff's motion for partial

summary judgment because it is clear as a matter of law that plaintiff was not a member of the

D.C. Excepted Service, and that plaintiff therefore is not entitled to judgment as a matter of law

on that claim.

An Order to this effect will issue this same day.


PAUL L. FRIEDMAN
United States District Judge


DATE: 6/30/06

22